THE BOARD OF EDUCATION OF THE TOWNSHIP OF EAST BRUNSWICK IN THE COUNTY OF MIDDLESEX, PLAINTIFF-RESPONDENT, v. THE TOWNSHIP COUNCIL OF THE TOWNSHIP OF EAST BRUNSWICK IN THE COUNTY OF MIDDLESEX, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 4, 1966—Decided April 11, 1966.

Before Judges CONFORD, KILKENNY and LEONARD.

*Mr. Stanton L. Levy* argued the cause for appellant.

*Mr. Richard S. Cohen* argued the cause for respondent.

*Mr. Joseph A. Hoffman,* Assistant Attorney General, argued the cause for the Attorney General of New Jersey (*Mr. Arthur J. Sills,* Attorney General of New Jersey).

*Mr. Stewart M. Hutt,* attorney for Township Council of Township of Woodbridge, *amicus curiae.*

*Mr. Thomas P. Cook,* attorney for State Federation of District Boards of Education, *amicus curiae.*

The opinion of the court was delivered by
CONFORD, S. J. A. D. This is an appeal from a judgment entered in the Law Division on a complaint filed by the Board of Education of East Brunswick ("board" hereinafter) alleging that the amount of the school budget fixed by the township council ("council" hereinafter) of that municipality for the fiscal year 1966–1967 and proposed to be certified by it to the county board of taxation was inadequate "to provide a thorough and efficient system of schools" in the township. As

requested by the board, Judge Halpern for the Law Division enjoined defendant council from certifying the budget to the county board of taxation and authorized plaintiff to file a petition with the State Commissioner of Education, pursuant to *R. S.* 18:3–14, to determine the meritorious issues raised.

On this appeal by the council from that action the Attorney General has, at his own request, been made a party and been heard. We have also permitted the filing of briefs *amicus curiae* by the parties named in the appearances, and these have been considered by the court.

The principal question presented is one of first instance and of considerable importance in an age of rising property taxes notable for the fact that school budgets are being frequently rejected by local voters, presumably as excessive.

The board here is what is known as a "Chapter 7" board of education, and its annual proposed budget is submitted to the voters for approval. *R. S.* 18:7–78 *et seq.* If the budget is rejected at the election the board is required to resubmit the same or a reduced budget to the voters at another election to be held within 15 days. *R. S.* 18:7–81. Upon a second rejection of the budget by the voters the governing body of the municipality is required within ten days after receipt of the proposed budget from the board, and after consultation with the board, to "certify to the county board of taxation the amount or amounts which the governing body * * * determine[s] to be necessary to provide a thorough and efficient system of schools in the district." *R. S.* 18:7–82. Should the governing body fail to do so within the time limited, the Commissioner of Education is directed to make that determination and certification. *R. S.* 18:7–83.

In the case at hand there were two rejections by the voters of both the current expenditures budget and the capital outlay budget proposed by the board, which were the same on both occasions. The proposed budget for 1966–1967, excluding debt service, was $5,154,096, an increase of $738,964 over the budget for the prior year. After the second election the council conferred with the board and thereafter made a

timely determination that it would certify $3,967,424 to be raised by taxation, leaving the board with a budget of $4,-959,096. The board's proposed budget exceeded that for the previous year by 16.7%, whereas that fixed by the council represented an increase of 12.3%. The council's budget is 3.7% less than that proposed by the board. Prospective school enrollment for 1966–1967 is estimated to be greater than that for the prior fiscal year by about 5.6%.

On this appeal defendant's main contention is that plaintiff's complaint about the reduced budget does not represent a controversy reviewable before the Commissioner of Education within the intent of R. S. 18:3–14, which requires the Commissioner to "decide * * * all controversies and disputes arising under the school laws." (The Commissioner's decision is in turn appealable to the State Board of Education. R. S. 18:3–15.) The Attorney General supports defendant's position in this regard. The burden of their argument is that the unique situation in which under the act a governing body is called upon, on short notice, to certify the amount to be raised by taxation because the voters have twice rejected the budget fixed by the board of education, is one in which the Legislature intends to vest unreviewable discretion in the governing body. The point is made that the time interval between the certification by the governing body of the school budget and the date by which the county board of taxation is required to promulgate a general tax rate for the municipality based, in part, on the certified school budget, is so short that there is no time for a two-fold administrative review of the action of the governing body by the Commissioner and the State Board of Education, and that the Legislature should therefore not be deemed to have intended it.

We do not agree. There are many contingencies in school law and other administrative areas wherein administrative review is provided for actions otherwise regulated by statutory timetables. It must be presumed that the reviewing agency, here the Commissioner of Education, will hear and decide a controversy such as this in an expeditious manner so

as to minimize delay harmful to the primary legislative objective. In the instant case the factor of delay during review is of less importance than ordinarily, since the injunction against certification of the council's budget to the county board of taxation has been vacated by the trial court pending this appeal. (Incidentally, the parties agree that should the council's budget be set aside, there is ample statutory authority to implement any higher budget resulting from the review.) We perceive no basis for a holding that the legislative direction for review by the Commissioner of *"all* controversies and disputes arising under the school laws" (emphasis ours) means less than what it clearly says. This is such a controversy, none the less so because it involves a dispute over action by a governing body. *Montclair v. Baxter,* 76 *N. J. L.* 68, 70 (*Sup Ct.* 1908).

The concern expressed by the council and the Attorney General over the availability of administrative review in such a case as this may be substantially allayed by the considerations that: (1) in appropriate situations the court can accept direct jurisdiction over such a dispute, by-passing the statutory administrative review, *R. R.* 4:88–14; and (2) the scope of review in this kind of controversy is fairly narrow, thereby tending toward speedy consummation of the review process.

█ Although the complaining party here is not by-passing administrative review—having gone to court solely to effect maintenance of the *status quo* while pursuing the statutory review—the issue of exhaustion of remedies is before us since defendant argues, alternatively, that we should decide the controversy on its merits by holding that the budget it adopted is not shown to involve a "breakdown in the educational system," absent which its action is impregnable. We hold this is a case properly for exhaustion of administrative review—at least where, as here, the time emergency has been obviated. The controversy involves more than a mere question of law. Although, as we shall indicate, the scope of review will be confined to an inquiry into any arbitrariness in the action of the council, the fact background for such a

determination lies in the area of the expertise of the Commissioner.

In an attempt to ascertain whether plaintiff's specific complaints were such as could be more conveniently resolved either by this court now or on remand by the Law Division, we invited an offer of proof by plaintiff and a response thereto by defendant. Without here detailing the respective positions thus revealed we are satisfied the board's assertion of arbitrariness by the council is more appropriately for resolution by the statutory review agency—the Commissioner.

Before the Commissioner, however, plaintiff will have to carry a heavy burden of proof. The issue here concerns the exercise of legislative discretion by the council rather than, as in most controversies arising under the school laws, determinations involving findings of facts under specific and fairly objective statutory criteria and an application thereto of the law, *e. g., In re Masiello,* 25 *N. J.* 590 (1958). In the latter type of situation the Commissioner is required to weigh the evidence and to make independent findings. *Id.,* at *p.* 606. See also *Booker v. Board of Education, City of Plainfield,* 45 *N. J.* 161 (1965), wherein the scope of review by the Commissioner was held to be quite broad in view of the constitutional rights of equal protection of the school children involved in that controversy.

But where all that was presented for review was the propriety of the exercise of a school board's discretion to discontinue a school, the Court of Errors and Appeals (per Schettino, J.) in *Boult v. Board of Education of Passaic City,* 136 *N. J. L.* 521, 523 (*E. & A.* 1947), held that the Commissioner would be properly guided "by the principles governing the scope of judicial review of municipal action." He would be precluded from substituting his discretion for that of the local board. *Ibid.* In the case then before the court the Commissioner was sustained in declining to interfere with the exercise of discretion by the board when the attack proposed thereon was merely that the local board's determination was based upon "erroneous factual material." *Ibid.* And see

*Kopera v. West Orange Bd. of Education,* 60 *N. J. Super.* 288, 295–296 *(App. Div.* 1960). In *Booker, supra,* the court carefully distinguished a *Boult*-type review problem from the segregation-equal protection controversy there before it (45 *N. J.,* at *p.* 177).

In the present case, the council is, in the special contingency presented, constituted by the Legislature *pro hac vice* a board of education to fix a school budget. See *Botkin v. Mayor and Borough Council of Borough of Westwood,* 52 *N. J. Super.* 416, 426 *(App. Div.* 1958), appeal dismissed on other grounds 28 *N. J.* 218 (1958). The Commissioner is theoretically bound to respect its exercise of judgment and discretion in that regard, to the same degree as if he were reviewing a complaint of a taxpayer that a board of education budget was deficient or excessive. He may not supplant the council's budget merely because of any concept by him that the board's budget rather than the council's better serves the constitutional mandate for "a thorough and efficient system of free public schools." *N. J. Const.* (1947), *Art.* 8, § IV, *par.* 1. Nor may he abrogate the council's budget for the mere reason alone that he would have fixed a larger one had the council failed to promulgate a budget within the ten-day period and the responsibility to do so had then fallen to the Commissioner under the statute. *R. S.* 18:7–83. Acting under the latter section the Commissioner's authority would have been as broad as that of the board of education or governing body. But sitting as a reviewing body under *R. S.* 18:3–14 his authority is perforce narrower in the light of the nature of the action to be reviewed.

In short, the council's action must be sustained unless the Commissioner finds the budget it fixed was so deficient as to constitute a purely arbitrary exercise of discretion devoid of any reasonable foundation.

Judgment affirmed. No costs.